**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Randy Jacobs, et al., | No. MC-23-00032-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Advanced Dermatology & Skin Cancer Specialists PC, et al., | |
| Defendants. | |

## INTRODUCTION

This subpoena enforcement action arises out of a lawsuit that Dr. Randy Jacobs ("Dr. Jacobs") filed in July 2020 in the Central District of California ("the California Action") against Advanced Dermatology & Skin Cancer Specialists, P.C. ("Advanced Dermatology") and some of its directors, officers, and employees. In April 2022, Dr. Jacobs filed a First Amended Complaint ("FAC") in the California Action naming Desert Dermatology & Skin Care Specialists, Inc. ("Desert Dermatology") as an additional defendant. (Doc. 1-2 at 2-44.) However, in September 2022, the judge overseeing the California Action dismissed all claims against Desert Dermatology with leave to amend. (*United States ex rel. Jacobs v. Advanced Dermatology & Skin Cancer Specialists, P.C., et al.*, No. 20-cv-01373-JGB-SHK (C.D. Cal.), Dkt. 70.)

In April 2023, in connection with the California Action, Dr. Jacobs served a Rule 45 subpoena on Desert Dermatology seeking documents concerning Desert Dermatology's relationship with Advanced Dermatology and its directors, officers, and employees and

1    concerning Desert Dermatology's medical and billing practices.  (Doc. 1-3 at 2-12.)  In

2    August 2023, Dr. Jacobs filed, in the District of Arizona, a motion to compel Desert

3    Dermatology to produce the subpoenaed documents.  (Doc. 1.)

4        While the motion to compel was pending, Dr. Jacobs filed a Second Amended

5    Complaint ("SAC") in the California Action that re-added Desert Dermatology as a

6    defendant.  (No. 20-cv-01373-JGB-SHK, Dkt. 154.)  In October 2023, Dr. Jacobs served

7    requests for production on Desert Dermatology in the California Action that are

8    substantially identical to the requests for production in the subpoena.  (Doc. 11 at 4-12.)

9        In light of these developments, the Court concludes that the most prudent course of

10   action is to transfer Dr. Jacobs's pending motion to the issuing court in the Central District

11   of California pursuant to Rule 45(f) and close this miscellaneous action.[1]

12                              **BACKGROUND**

13   I.    <u>The Parties And Other Relevant Entities</u>

14        Advanced Dermatology has its principal place of business in Temecula, California

15   and office locations in Temecula, Hemet, San Bernardino, Riverside, Corona, Menifee,

16   Sun City, Moreno Valley, Victorville, La Quinta, and Palm Springs, California.  (Doc. 1-2

17   at 5 ¶ 7.)  "The corporation also has affiliated offices in Yuba City and Stockton, doing

18   business as Advanced Dermatology & Skin Cancer Specialists of Northern California."

19   (*Id.*)

20        Desert Dermatology is an Arizona corporation with its principal place of business

21   in Tucson, Arizona and office locations in Gilbert and Glendale, Arizona.  (*Id.* at 5 ¶ 8.)

22   "Desert Dermatology is a related entity to Advanced Dermatology with common

23   ownership, leadership, and practices."  (*Id.*)

24        Advanced Dermatology and Desert Dermatology are Medicare/Medicaid providers.

25   (*Id.* at 10 ¶ 23.)  Advanced Dermatology and Desert Dermatology offer patients Mohs

26   micrographic surgery ("Mohs surgery"), "a specialized technique for the removal of skin

27

28   _____

[1]    Desert Dermatology's request for oral argument is denied because the issues are fully briefed and oral argument will not aid the decisional process.  *See* LRCiv 7.2(f).

- 2 -

cancer."  (*Id.* at 15 ¶ 48.)  "The vast majority of [Advanced Dermatology's and Desert Dermatology's] patients indicated for Mohs surgery are over the age of 65 and are Medicare beneficiaries."  (*Id.* at 19 ¶ 70.)  Under Medicare, "Mohs is a bundled code and can only be bundled if the same doctor performs all elements of the procedure—otherwise, the lower reimbursable, separate codes are to be used (for essentially the same overall process).  Medicare also separately reimburses for each stage of Mohs surgery performed in removing cancer.  Hence, the more stages of Mohs surgery that are performed, the higher the reimbursement from Medicare."  (*Id.* at 17 ¶ 60.)

Dr. Jacobs "is a board-certified clinical dermatologist."  (*Id.* at 4 ¶ 6.)

Dr. Jesse Mitchell ("Dr. Mitchell") is a "Dermatologist at Advanced Dermatology and Desert Dermatology, is listed as the owner of Advanced Dermatology, and is a director of Desert Dermatology."  (*Id.* at 5 ¶ 9.)

Christopher Clem "is a non-physician" who "directs both the day-to-day operations and the broader management of both Advanced Dermatology and Desert Dermatology" and "is listed with the Arizona Secretary of State as an officer of Desert Dermatology."  (*Id.* at 5 ¶ 10.)

II.    The California Action

On July 9, 2020, Dr. Jacobs filed the California Action, naming Advanced Dermatology, Dr. Mitchell, and Dr. Roupen Yaghsezian as defendants.  (No. 20-cv-01373-JGB-SHK, Dkt. 1.)  The complaint alleged violations of the False Claims Act ("FCA") arising out of Advanced Dermatology's billing practices for Mohs procedures.  (*Id.* at 22-30.)

On April 29, 2022, Dr. Jacobs filed the FAC in the California Action, naming Desert Dermatology and Clem as additional defendants.  (Doc. 1-2 at 2-44.)  In relevant part, the FAC alleges as follows:

> Dr. Mitchell and Chris Clem are also the purported owners and officers of a nearly identically named Desert Dermatology . . . .  Dr. Mitchell performs the Mohs medical procedures connected to the false claims in the [California] Action.  Dr. Mitchell performs the same medical procedures in Arizona

through [Desert Dermatology].  Overall, the individual Defendants appear to be engaged in the same fraudulent billing practices through [Desert Dermatology] including using pathologists and omitting their NPI numbers from [Desert Dermatology's] billing (using the same billing company—run by Mr. Clem's family), entering kickback arrangements with pathologists, using unsupervised PAs, and violating CLIA.

(Doc. 1 at 2-3.)

On June 17, 2022, Desert Dermatology filed a motion to dismiss the claims against it in the FAC for lack of personal jurisdiction.  (No. 20-cv-01373-JGB-SHK, Dkt. 48.)

On September 28, 2022, the Central District of California granted Desert Dermatology's motion to dismiss with leave to amend and set an October 11, 2022 deadline for further amending the complaint.  (No. 20-cv-01373-JGB-SHK, Dkt. 70.)

On February 2, 2023, the Central District of California set an April 24, 2023 deadline to amend the pleadings or add new parties to the California Action (No. 20-cv-01373-JGB-SHK, Dkt. 90 at 1), and later extended this deadline to August 24, 2023 (No. 20-cv-01373-JGB-SHK, Dkt. 100 at 2).

III.    Rule 45 Subpoena

On April 24, 2023, as part of the California Action, Dr. Jacobs obtained a Rule 45 subpoena directed to Desert Dermatology.  (Doc. 1-3 at 2-12.)  The subpoena includes requests for documents related to Desert Dermatology's relationships with Dr. Mitchell, Clem, and Advanced Dermatology; "in any way related to Mohs surgeries, billing, PA supervision, AKS, or CLIA issues"; "in any way related to any contact with the State of California or any person or entity in that state"; "in any way related to billing for Mohs surgeries wherein a surgeon and pathologist work together to complete the procedure"; and "in any way related to billing Mohs surgeries to any FHBP."  (*Id.* at 10-12.)  The subpoena requires Desert Dermatology to produce the documents in Phoenix, Arizona.  (*Id.* at 2.)

On June 13, 2023, Desert Dermatology's counsel responded to the subpoena in writing with several objections.  (Doc. 5-1 at 2-12.)

On June 27, 2023, Desert Dermatology's counsel sent a supplemental response to

1   the subpoena.  (Doc. 5 at 2 n.1.)[2]

2          On June 29, 2023, Desert Dermatology's counsel and Dr. Jacobs's counsel

3   "participated in a lengthy meet and confer telephone conference."  (Doc. 5-3 at 4-5 ¶¶ 13-

4   16.)

5          On July 27, 2023, after the meet-and-confer conference, Dr. Jacobs's counsel sent

6   a follow-up letter regarding some of the issues discussed during the meet-and-confer

7   conference.  (Doc. 5-2 at 18-22.)  Desert Dermatology's counsel interpreted the letter as

8   "rais[ing] new substantive legal arguments and purport[ing] to completely re-do Subpoena

9   Request No. 5."  (Doc. 5-3 at 16, internal citations omitted.)  Desert Dermatology's counsel

10  requested additional time to prepare a response to the subpoena and letter.  (*Id.*)

11         On August 2, 2023, Desert Dermatology's counsel offered to meet and confer with

12  Dr. Jacobs's counsel.  (*Id.* at 7 ¶ 25.)  That same day, Dr. Jacobs filed the pending motion

13  to compel.  (Doc. 1.)

14         On August 3, 2023, Desert Dermatology's counsel sent a second supplemental

15  response to the subpoena, "including producing approximately 58 pages of documents."

16  (Doc. 5-2 at 2-16; Doc. 5-3 at 8 ¶ 27.)

17         On August 22, 2023, the motion to compel became fully briefed.  (Docs. 5, 6.)

18  IV.   Recent Developments

19         On September 25, 2023, Dr. Jacobs filed the SAC in the California Action, re-

20  adding Desert Dermatology as a defendant and alleging FCA violations arising from Desert

21  Dermatology's billing practices for Mohs surgeries.  (No. 20-cv-01373-JGB-SHK, Dkt.

22  154.)  The SAC also asserts, in relevant part, that "Desert Dermatology does not maintain

23  a separate identity from Advanced Dermatology, SoCal, Dr. Mitchell, or Clem."  (*Id.* at 51

24  ¶ 235.)

25         On October 12, 2023, Dr. Jacobs served Rule 34 requests for production on Desert

26

27  [2]      Desert Dermatology's first supplemental response to the subpoena is not included
    in the record.  (*Id.* ["To limit the volume before the Court, Desert Dermatology is not
28  providing its first supplemental response, dated June 27, 2023."].)

1  Dermatology in the California Action.  (Doc. 11 at 4-12.)  The requests for production in

2  the California Action are essentially identical to the requests for production in the

3  subpoena.  (*Compare* Doc. 11 at 10-12 *with* Doc. 1-3 at 10-12.)[3]

4       On October 20, 2023, Desert Dermatology filed a motion to dismiss the claims

5  against it in the SAC for lack of personal jurisdiction, lack of prosecution, and failure to

6  state a claim.  (No. 20-cv-01373-JGB-SHK, Dkt. 184.)  That motion is pending.

7       Discovery in the California Action closes on April 18, 2024.  (No. 20-cv-01373-

8  JGB-SHK, Dkt. 100 at 2.)

9                          **DISCUSSION**

10  I.    Rule 45 Subpoena Served On A Party

11       The recent developments in the California Action raise a threshold issue not

12  addressed in the motion-to-compel briefing—whether the change in Desert Dermatology's

13  status in the California Action, from nonparty to party, undermines the validity of the Rule

14  45 subpoena that Dr. Jacobs seeks to enforce.

15       A.    **Legal Standard**

16       Rule 34(a) of the Federal Rules of Civil Procedure provides that "[a] party may

17  serve on any other party a request" for production of documents.  Additionally, Rule 34(c)

18  explains that, "[a]s provided in Rule 45, a nonparty may be compelled to produce

19  documents and tangible things."  Although the juxtaposition of these two provisions might

20  be viewed as suggesting that Rule 34 is the sole mechanism for compelling the production

21  of documents from another party (and that Rule 45 cannot be used for that purpose), Rule

22  45 does not expressly state that a subpoena may only be served on a nonparty—to the

23  contrary, Rule 45(a)(1)(A)(iii) states that a subpoena may be directed to a "person."  As a

24  result, the majority view is that Rule 45 subpoenas can be served on both parties and

25  nonparties.  *See, e.g.*, *Marten v. Haire*, 329 F.R.D. 256, 259 (D. Mont. 2018) ("There may

26  be cases where a Rule 45 subpoena is an appropriate discovery tool when addressed to a

27  _____

28  [3]       The only seeming differences between the subpoena and the requests for production in the California Action are the definitions and instructions.

party . . . ."); *Gaudin v. Remis*, 2007 WL 294130, *3 (D. Haw. 2007) ("[C]ourts and commentators have taken conflicting positions on the issue whether a party may serve a Federal Rule of Civil Procedure 45 subpoena on another party. . . .  [T]he text of Rule 45 contains no limitation upon the persons who may be served; it refers to a 'person' who may be served, rather than a 'non-party.'  In describing who may serve a subpoena, Rule 45(b)(1) refers to a 'person who is not a party.'  The drafters could have used the same language to limit who may be served with a subpoena, but they chose not to do so. . . .  This Court . . . [thus] concludes that a Rule 45 subpoena may be served on a party.") (cleaned up).  *See generally* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 45, at 1349 (2022) ("The courts are split on whether a party may nonetheless serve a subpoena on another party as part of the discovery process.  The majority view is that it is allowed.").

But even under the majority view, a Rule 45 subpoena "cannot be used to circumvent Rule 34 or the other discovery rules."  *McCall v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 3174914, *6 (D. Nev. 2017).  *See generally* Gensler, *supra*, Rule 45, at 1349 ("However, the subpoena process cannot be used to circumvent party-discovery restrictions in the discovery rules.").  Examples of circumvention include when a party "attempt[s] to use a Rule 45 subpoena to subvert the meet and confer requirements of [Rule] 37," *Marten*, 329 F.R.D. at 260; when a party uses a Rule 45 subpoena to circumvent a scheduling order, *Layman v. Junior Players Golf Acad., Inc.*, 314 F.R.D. 379, 386 (D.S.C. 2016); and when a party uses the Rule 45 subpoena to require another party to respond to a request for production in a shorter time frame than the 30-day requirement in Rule 34, *Olmstead v. Fentress Cnty., Tennessee*, 2018 WL 6198428, *4 (M.D. Tenn. 2018).

B.    **Analysis**

The Court is satisfied that Dr. Jacobs is not using his Rule 45 subpoena to Desert Dermatology to circumvent Rule 34 or other discovery requirements.  Because Desert Dermatology was not a party to the California Action at the time Dr. Jacobs first made the requests for production, it was appropriate for Dr. Jacobs to rely on Rule 45 as the basis

1    for those requests.  Further, Dr. Jacobs served the subpoena on Desert Dermatology well

2    before the original discovery deadline in the California Action (*i.e.*, December 18, 2023),

3    which has since been extended.  (No. 20-cv-01373-JGB-SHK, Dkt. 90 [scheduling order];

4    Dkt. 100 [extending deadlines set in scheduling order].)  *Mortg. Info. Servs., Inc. v.*

5    *Kitchens*, 210 F.R.D. 562, 568 (W.D.N.C. 2002) ("[S]ervice of a Rule 45 subpoena duces

6    tecum upon a party opponent is appropriate when done prior to the close of the discovery

7    period.").  Finally, Dr. Jacobs did not attempt to force Desert Dermatology to produce

8    documents in a shorter time frame than that required by Rule 34—the parties agreed to set

9    the response date as June 13, 2023, 51 days after service of the subpoena.  (Doc. 5-3 at 3.)

10   II.    <u>Transfer</u>

11          A.   **Legal Standard**

12         Although Rule 45(a)(2) requires that a Rule 45 subpoena issue from the court where

13   the action is pending (*i.e.*, the issuing court), Rule 45(d)(2)(B)(i) provides that motions to

14   compel compliance with the subpoena must be heard by the district court encompassing

15   the place where compliance is required (*i.e.*, the compliance court).  *See also Venus Med.*

16   *Inc. v. Skin Cancer & Cosm. Dermatology Ctr. PC*, 2016 WL 159952, *2 (D. Ariz. 2016).

17   Accordingly, Dr. Jacobs properly filed the motion to compel in the District of Arizona.

18         Nevertheless, under Rule 45(f), "[w]hen the court where compliance is required did

19   not issue the subpoena, it may transfer a motion under this rule to the issuing court if the

20   person subject to the subpoena consents or if the court finds exceptional circumstances."

21   *Id.*  The Advisory Committee notes provide the following explanation concerning the

22   "exceptional circumstances" standard:

23            The prime concern should be avoiding burdens on local nonparties subject to
             subpoenas, and it should not be assumed that the issuing court is in a superior
24         position to resolve subpoena-related motions.  In some circumstances,
             however, transfer may be warranted in order to avoid disrupting the issuing
25         court's management of the underlying litigation, as when that court has
             already ruled on issues presented by the motion or the same issues are likely
26         to arise in discovery in many districts.  Transfer is appropriate only if such
             interests outweigh the interests of the nonparty served with the subpoena in
27         obtaining local resolution of the motion.

28

*Id.  See also Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, 2022 WL 2820667, *5 (S.D. Cal. 2022) ("The primary purpose of resolving subpoena-related motions in nonparties' home district is to protect them from the burden of challenging a subpoena in a remote location.") (quotations and citations omitted); *Venus Med.*, 2016 WL 159952 at *2 ("[T]he court must balance the interest of local resolution against factors such as judicial economy and risk of inconsistent rulings.").  "Ultimately, whether to transfer a subpoena-related motion is committed to the discretion of the court where compliance is required." *Hall v. Marriott Int'l Inc.*, 2021 WL 3129598, *1 (N.D. Cal. 2021).  The compliance court's decision to transfer a motion to compel "may be made either on motion or *sua sponte*." *Gov't Emps. Health Ass'n v. Actelion Pharms., Ltd.*, 2022 WL 5414401, *2 (S.D. Ohio 2022).  *See also Victim Servs., Inc. v. Consumer Fin. Prot. Bureau*, 298 F. Supp. 3d 26, 28 (D.D.C. 2018) ("Where exceptional circumstances exist, a court may transfer such a subpoena-related motion *sua sponte*.").

  B. **Analysis**

   1. <u>Risk Of Disrupting Issuing Court's Case Management</u>

   In determining whether transfer under Rule 45(f) is appropriate, courts "consider[] a number of factors relating to the underlying litigation including the . . . complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *E4 Strategic Solutions, Inc. v. Pebble Ltd. P'ship*, 2015 WL 12746706, *3 (C.D. Cal. 2015) (internal quotations omitted).  Exceptional circumstances may exist "where ruling on the motion to compel would . . . risk disruption of the issuing court's management of the underlying litigation," *Mirza v. Yelp, Inc.*, 2021 WL 2939922, *3 (N.D. Cal. 2021), such as "[w]hen the issuing court has already ruled on issues presented by a subpoena-related motion," *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429 (N.D. Cal. 2014), or when "the same issues are likely to arise in discovery in many districts," Fed. R. Civ. P. 45, advisory committee notes to the 2013 amendments.  In these circumstances, the issuing court "is in a better position to rule on [discovery-related] motions due [to] its familiarity with the

1    issues involved." *Moon Mountain Farms*, 301 F.R.D. at 430.

2         Exceptional circumstances warranting transfer exist here for several reasons. As an

3    initial matter, the California Action has been pending since July 2020 and much discovery

4    has already taken place under the issuing court's supervision. *Venus Med.*, 2016 WL

5    159952 at *3 ("Judicial economy also weighs in favor of transfer. The underlying action is

6    over three years old and involves discovery sought from several defendants."); *In re UBS*

7    *Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015)

8    (concluding that the pendency of the underlying litigation for almost three and a half years

9    weighed in favor of transfer); *Full Circle United, LLC v. Bay Tek Ent., Inc.*, 581 F. Supp.

10   3d 523, 525 (S.D.N.Y. 2022) (finding that ongoing discovery in the underlying action,

11   among other factors, weighed in favor of transfer); *In re Disposable Contact Lens Antitrust*

12   *Litig.*, 306 F. Supp. 3d 372, 379 (D.D.C. 2017) ("[T]he Issuing Court 'has already

13   supervised substantial discovery'—which is a factor that weighs in favor of transfer under

14   Rule 45(f).") (citation omitted). *See also In re All. Healthcare Partners, LLC*, 2022 WL

15   16527952, *4 (D. Ariz. 2022) (underlying case pending for nearly a year and a half).

16        More important, under the unique procedural circumstances here, the issuing court

17   is much better suited than this Court to evaluate Desert Dermatology's objections to the

18   subpoena, which include "lack of particularity, lack of proportionality, undue burden and

19   expense, [and] ambiguity." (Doc. 5 at 10.) Desert Dermatology also argues, *inter alia*,

20   that Request Nos. 6 and 7 "are irrelevant" and "deeply intrusive into Desert Dermatology's

21   business practices and operations." (*Id.* at 12.) Evaluating the relevance of Dr. Jacobs's

22   requests for production will require consideration of Desert Dermatology's status in the

23   California Action and connection to Advanced Dermatology, issues currently being

24   litigated in the California Action (No. 20-cv-01373-JGB-SHK, Dkt. 154 [SAC adding

25   Desert Dermatology, among others, as a defendant]; Dkt. 184 [motion to dismiss the SAC

26   and hearing set for December 11, 2023]; Dkt. 198 [response to motion to dismiss the

27   SAC].)[4]  Given that Desert Dermatology's objections to the subpoena implicate issues in

28   ───────────────
     [4]     The parties dispute Desert Dermatology's connection to Advanced Dermatology in
     the motion-to-compel briefing. (Doc. 5 at 13 ["Desert Dermatology does not have an

1    the California Action with which the issuing court is familiar, the issuing court is best

2    suited to decide the motion to compel.  *Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 47

3    (D.D.C. 2016) ("Because the Judge and the Magistrate Judge involved in the underlying

4    case are knee-deep in the nuances of the underlying litigation, they are in a much better

5    position than this Court to evaluate relevance.  Accordingly, the centrality of the relevance

6    issue to resolving the motion to quash strongly weighs in favor of transferring the motion

7    to the issuing court.") (internal citation omitted); *Wultz v. Bank of China, Ltd.*, 304 F.R.D.

8    38, 46 (D.D.C. 2014) ("[The issuing court] is in a better position to rule on the intervenors'

9    motion to quash or modify the subpoena due to her familiarity with the full scope of issues

10   involved as well as any implications the resolution of the motion will have on the

11   underlying litigation."); *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C.

12   2014) ("[T]he relevance argument advanced emphasizes the need for the court where the

13   underlying matter lies to decide the matter.") (citation omitted).

14        Separately, Desert Dermatology also argues that Dr. Jacobs's subpoena is best

15   characterized as "jurisdictional discovery, and this is not allowed" because Dr. Jacobs "did

16   not ask the [issuing court] for permission to conduct jurisdictional discovery in Arizona."

17   (Doc. 5 at 14, capitalization omitted.)  Desert Dermatology also argues that Dr. Jacobs's

18   "subpoena in Arizona is inconsistent with the California Court's Order [rejecting his

19   request for jurisdictional discovery relating to Desert Dermatology] and clear intent that

20   jurisdictional discovery is unwarranted."  (*Id.*)  In response, Dr. Jacobs argues that he "is

21   in no way precluded from asking questions that may reveal facts relevant to personal

22   jurisdiction."  (Doc. 6 at 11.)  Further, Dr. Jacobs argues that jurisdictional discovery

23   requires a court order "only . . . when seeking discovery before the 26(f)-discovery

24   _____

25   ownership interest in the main California litigant, Advanced Dermatology; it does not sit
     on Advanced Dermatology's board; and it has no financial tie to the outcome of the
     California case; in other words, these are truly separate entities. Also, Desert Dermatology,
26   with separate counsel, was not involved in any of the alleged underlying events in
     California; in fact, Desert Dermatology does not do business in California.  And the
27   California court has made no determination that Relator should seek documents from
     nonparty entities with common ownership . . . .]; Doc. 6 at 9 ["[C]ourts do not even consider
28   a non-party like DD—an entity owned and controlled by Defendants—to be 'truly
     disinterested' for purposes of Rule 45."], citations omitted.)

conference, which clearly doesn't apply here." (*Id.* at 12.)  These arguments implicate an issue upon which the issuing court has already ruled.  In proceedings held on September 28, 2022, Judge Bernal stated that "[t]he Court acknowledges Plaintiff's request for discovery on jurisdiction, which Relator asserts would be necessary to establish additional facts.  The Court declines to order discovery on the issue at this time."  (No. 20-cv-01373-JGB-SHK, Dkt. 70 at 12 n.7.)  Given this backdrop, the issuing court is best suited to decide whether the subpoena constitutes improper jurisdictional discovery.  *See also Bright House Networks, LLC v. MarkMonitor, Inc.*, 2020 WL 4464882, *3 (N.D. Cal. 2020) ("The underlying matter has been pending for 500 days and the Middle District has already ruled on discovery disputes in that matter so that court is assuredly more familiar with the relevant issues and technical background of the dispute.  Ruling on the Motion to Compel would require this Court to duplicate substantial work already done by that court.") (internal citations omitted); *3B Med., Inc. v. Resmed Corp.*, 2016 WL 6818953, *3 (S.D. Cal. 2016) ("The Florida district court has already ruled on discovery-related motions in this matter, including motions of third-party subpoenas.  Because the Middle District of Florida is in a better position to rule on these motions based on its familiarity with the issues involved, the Court finds exceptional circumstances exist and that transfer is permitted under Rule 45.") (internal citation omitted).

Yet another exceptional circumstance supporting transfer is that Desert Dermatology's objections to the subpoena include attorney-client privilege and employee privacy claims.  (Doc. 5-2 at 5, 7, 9-11, 13-14.)[5]  The issuing court is currently overseeing a related discovery dispute involving privilege assertions.  (No. 20-cv-01373-JGB-SHK, Dkt. 122 [motion to compel privilege log]; Dkt. 129 [opposition to motion to compel privilege log claiming attorney-client privilege]; Dkt. 135 [reply to motion to compel privilege log]; Dkt. 173 [motion for leave to file supplement to motion to compel privilege

---

[5]      Desert Dermatology also asserted physician-patient confidentiality in its first response to Dr. Jacobs's subpoena (Doc. 5-1 at 4, 6, 10-12) but retracted that objection before Dr. Jacobs filed the pending motion to compel (Doc. 5 at 3 ["In counsel's meet and confer conference, on June 29, 2023, Relator's counsel asked Desert Dermatology's counsel to reconsider these objections.  Desert Dermatology agreed."]).

log]; Dkt. 189 [opposition to motion for leave to file supplement to motion to compel privilege log]; Dkt. 190 [granting motion to file supplement]; Dkt. 193 [supplement to motion to compel privilege log].)   Although those disputes do not involve Desert Dermatology, it is still the case that "[j]udicial economy would be served by having all discovery disputes resolved by the same court." *Bauer v. Hill*, 2023 WL 6170550, *2 (S.D. Ohio 2023).

Similarly, the issuing court is best suited to evaluate the parties' arguments regarding the sufficiency and timeliness of Desert Dermatology's response to Dr. Jacobs's subpoena.  Dr. Jacobs argues that "DD has repeatedly sought avoidance and delay rather than complying with the Subpoena.  As part of this effort, DD has asserted untenable legal positions as a basis for refusing to comply."  (Doc. 1 at 7.)   In response, Desert Dermatology contends that "while Desert Dermatology has been required to make multiple objections due to the nature of and deficiencies in the subpoena, it has provided [Dr. Jacobs] with responsive and substantive information."  (Doc. 5 at 2.)  In reply, Dr. Jacobs reiterates that "Desert Dermatology substantially refuses to comply with [the] subpoena."  (Doc. 6 at 7, capitalization omitted.)  Because the issuing court has observed the parties' conduct over the last three years, and Desert Dermatology is (at least for now) a party to the California Action, the issuing court is in a better position to evaluate allegations of delay and insufficiency.  *Cf. Jud. Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 35 (D.D.C. 2014) ("[T]he Arizona court, which has had four years to observe the Respondents' conduct in the underlying litigation, is in the best position to evaluate Judicial Watch's argument that the Plaintiffs' August Subpoena was served for the improper purpose of attempting to harass Judicial Watch because of its political views and/or activism, rather than based on a genuine desire to gather evidence relevant to their remaining claims in the underlying litigation.") (cleaned up).

For these reasons, there is also a risk (absent transfer) of inconsistent rulings regarding the discovery sought.   Given the issuing court's involvement in pending discovery disputes in the California Action and the similarity of the requests for production

pending before this Court and the issuing court, a ruling here on the merits of Dr. Jacobs's motion may further complicate already-complex litigation with multiple defendants. *Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc.*, 2017 WL 1611915, *2 (W.D. Tex. 2017) ("Uniformity of discovery rulings in a case of this complexity is critical to achieving fairness to the parties and non-parties.").

Finally, in a related vein, discovery disputes between Dr. Jacobs and Desert Dermatology similar to those raised here will likely arise in the California Action in light of Dr. Jacobs's recent Rule 34 requests for production to Desert Dermatology in the California Action. As noted, the Rule 45 subpoena at issue here and the Rule 34 requests for production in the California Action are essentially identical.[6] This backdrop presents a danger of inconsistent rulings, which in turn favors transfer. *Wultz*, 304 F.R.D. at 46 ("[The] potential for inconsistent rulings should be avoided and weighs in favor of a single judicial officer deciding all of these disputes."); *Venus Med.*, 2016 WL 159952 at *3 ("Because two motions involving substantially similar issues are pending before two different courts, the danger of inconsistent rulings is present. This factor militates heavily in favor of transfer."); *E4 Strategic Sols.*, 2015 WL 12746706 at *3 ("Here, however, a ruling by the District of Alaska on a motion to quash raising substantially similar objections to virtually identical subpoenas is certain to occur because ACF and Synder's motion to quash has been fully briefed and is awaiting decision by the presiding judge in the

_____

[6] The Court acknowledges that one difference may arise with respect to Request No. 5. This is because Desert Dermatology argues that Dr. Jacobs's counsel's July 27, 2023 letter (Doc. 5-2 at 18-22) modified Request No. 5 in the subpoena. (Doc. 5 at 2.) In response, Dr. Jacobs argues that "[a]t DD's direct request in the June 29, 2023 conference, Relator sought to give DD's counsel more narrow and specific examples of the types of documents Relator sought regarding Request No. 5. Disingenuously, DD's [*sic*] has now told the Court that this is a 'modification letter' that voided Relator's subpoena as a further basis for noncompliance. This is not good faith." (Doc. 6 at 7, internal citation omitted.) Nevertheless, the broader point is that the issuing court is best positioned to resolve this issue because it has more familiarity with the overall case and actions of the parties. *Cf. Chem-Aqua, Inc. v. Nalco Co.*, 2014 WL 2645999, *4 (N.D. Tex. 2014) ("[Allegations of Nalco issuing subpoenas in bad faith] would weigh in favor of transferring these motions to the issuing court that is presiding over the underlying litigation and that is better positioned to assess Nalco's overall discovery conduct and what, if any, bearing that conduct should have on resolving Chem–Aqua's motion to quash and Nalco's motion to compel.").

Underlying Action, United States District Judge H. Russell Holland."); *Google, Inc. v. Digital Citizens All.*, 2015 WL 4930979, *3 (D.D.C. 2015) ("In this case, Google filed motions to compel compliance with subpoenas in multiple jurisdictions: three in the Southern District of New York, one in the Northern District of California, and three in the District of Columbia. The similarity of motions pending in multiple jurisdictions creates the 'potential for inconsistent rulings [that] should be avoided and weighs in favor of a single judicial officer deciding all of these disputes.'") (internal citation omitted).

### 2.    Burden On Nonparty

"Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." Fed. R. Civ. P. 45, advisory committee notes on the 2013 amendments. *See also Moon Mountain Farms*, 301 F.R.D. at 430 ("The Advisory Committee's notes to Rule 45 make clear that the primary focus in determining whether transfer is appropriate should be the burden on local nonparties."). Here, several factors suggest that transfer would not be unduly burdensome to Desert Dermatology.

First, and perhaps most obvious, the Court doubts this consideration is implicated here in light of the unique procedural circumstances—this consideration focuses on *nonparties*, but Desert Dermatology is (at least for now) a *party* to the California Action.

Second, even treating Desert Dermatology as a nonparty for the purpose of evaluating the burden of a transfer, that burden is insubstantial. Desert Dermatology is actively litigating in the California Action. (No. 20-cv-01373-JGB-SHK, Dkts. 184, 198.) *See also Bright House Networks*, 2020 WL 4464882 at *2 ("MarkMonitor is not a stranger to the underlying dispute."); *F.T.C. v. A $\pm$ Fin. Ctr., LLC*, 2013 WL 6388539, *3 (S.D. Ohio 2013) ("The Kentucky Court determined that transfer to the Florida Court was appropriate because both the FTC and NPC had participated in the Florida Litigation . . . ."). Further, Desert Dermatology's attorneys have already been admitted *pro hac vice* in the California Action. (No. 20-cv-01373-JGB-SHK, Dkts. 182, 186.) *All. Healthcare Partners*, 2022 WL 16527952 at *6 (D. Ariz. 2022) ("Alliance's Georgia-based counsel filed a *pro hac*

*vice* application at the outset of this dispute that was granted.  Accordingly, under the local rules of this Court, counsel is now 'permitted to appear and participate in [this] particular case.'") (citation omitted).  *Cf. Hoog v. PetroQuest*, LLC, 338 F.R.D. 515, 518 (S.D. Fla. 2021) ("Further, there is no burden or prejudice to Mr. Palumbo to have the Eastern District of Oklahoma resolve this matter upon transfer, especially since Mr. Palumbo's counsel are the very same lawyers who represent the defendants in the underlying litigation.").

The motion to compel is also already fully briefed (Docs. 1, 5, 6), so transferring it to the issuing court would not require much additional effort on behalf of Dr. Jacobs and Desert Dermatology.  *Disposable Contact Lens*, 306 F. Supp. 3d at 380 ("Therefore, transferring this case (which would effectively only require Respondent to refile an opposition brief that he has already submitted) 'does not rise to the level of unfair prejudice' to Respondent.") (citation omitted); *Moon Mountain Farms*, 301 F.R.D. at 430 ("Transferring a motion to the jurisdiction where the underlying litigation is pending that will require few, if any, modifications of the written submissions, [and therefore] does not rise to the level of unfair prejudice.") (citation omitted).

Third, the issuing court has granted previous requests to hold discovery-dispute hearings in the California Action over Zoom (No. 20-cv-01373-JGB-SHK, Dkts. 95, 112, 123, 202), and Zoom hearings would reduce Desert Dermatology's costs associated with litigating the motion to compel in the Central District of California.  In fact, Rule 45(f) provides that "[i]f the motion is transferred, judges are encouraged to permit telecommunications methods to minimize the burden a transfer imposes on nonparties, if it is necessary for attorneys admitted in the court where the motion is made to appear in the court in which the action is pending."  Fed. R. Civ. P. 45, advisory committee notes to the 2013 amendments.

In sum, given the amount of time the issuing court has already spent overseeing the California Action and its discovery disputes, the fact that resolving the motion to compel may rise and fall on the issuing court's determination of Desert Dermatology's status in the California Action, and the overlap between the subpoena and the requests for

1  production in the California Action, the Court finds that exceptional circumstances exist

2  warranting transfer of Dr. Jacobs's motion to the Central District of California.  Any burden

3  on Desert Dermatology is outweighed by the importance of consistent management of the

4  underlying litigation and judicial economy.

5       Accordingly,

6       **IT IS ORDERED** that the Clerk is **DIRECTED** to **TRANSFER** Dr. Jacobs's

7  motion to compel (Doc. 1) to the Central District of California and close this miscellaneous

8  action.

9       Dated this 24th day of November, 2023.

10

11

12       _____

13       Dominic W. Lanza
         United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28